**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| VIVIAN LEE and JOHN DOES 1-100, *on behalf of themselves and all others similarly situated,* | |
| Plaintiffs, | Case No.: |
| -against- | **CLASS ACTION COMPLAINT** |
| L'OREAL USA, INC., | JURY TRIAL DEMANDED |
| Defendant. | |

---

Plaintiffs, VIVIAN LEE and JANE DOES 1-100 (together, "Plaintiffs"), individually and on behalf of all other persons similarly situated, by their undersigned attorneys, as and for their Complaint against the defendant, L'OREAL USA, INC. (hereinafter, "Defendant"), allege the following based upon personal knowledge as to themselves and their own action, and, as to all other matters, respectfully allege, upon information and belief, as follows (Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery):

## NATURE OF THE ACTION

1. This is a consumer protection class action arising out of Defendant's deceptive practices in the marketing, advertising, and promotion of its L'Oreal Paris® Advanced Haircare

Total Repair 5 Damage Erasing Balm (hereinafter, "Total Repair 5 Damage Erasing Balm" or the "Product"). As alleged with specificity herein, through an extensive, widespread, comprehensive, and uniform nationwide marketing campaign, Defendant claims that the Total Repair 5 Damage Erasing Balm actually "repairs up to one year of damage in 1 use," according to Defendant's website, www.lorealparisusa.com (hereinafter, the "Website"). Defendant also claims that the Total Repair 5 Damage Erasing Balm "instantly repairs the 5 signs of damage – split ends, weakness, roughness, dullness and dehydration." Defendant's hair repair claims however, are false, misleading, and reasonably likely to deceive the public because there are no ingredients in the Total Repair 5 Damage Erasing Balm that could actually repair a year's worth of hair damage "instantly," particularly after one use.

2.   Defendant makes the same hair repair claims throughout the Total Repair 5 Damage Erasing Balm's marketing materials, such as the product's webpage, as shown below:








### Advanced Haircare - Total Repair Damage Erasing Balm 8.5oz

★★★★☆  SEE ALL 77 REVIEWS | WRITE A REVIEW

Repairs Up to One Year of Damage.
5 Problems.
1 Solution.

$6.99          BUY IT    FIND NEAR YOU

DESCRIPTION    **INGREDIENTS**    **HOW TO USE**

Total Repair 5 Damage Erasing Balm is a rinse-out reconstructing balm that repairs up to one year of damage in 1 use*. Both powerful and luxurious, the balm instantly repairs the 5 signs of damage – split ends, weakness, roughness, dullness, and dehydration. * Reverses damage to hair's smoothness with daily use, when using the system of shampoo & balm.

EXPLORE ADVANCED HAIRCARE                    ›

EXPLORE ALL HAIR CARE PRODUCTS              ›

3.    Each person who purchased the Product has been exposed to Defendant's misleading advertising message numerous times.  For example, on the Total Repair 5 Damage Erasing Balm product page on Defendant's website, www.lorealparisusa.com, Defendant represents that its Total Repair 5 Damage Erasing Balm is a rinse-out reconstructing balm that "repairs up to one year of damage in 1 use." On the same page under the Product name, Defendant states "Repairs Up to One Year of Damage. 5 Problems. 1 Solution." Furthermore, on the front of Defendant's Product label, Defendant states that the Product "Repairs Up to 1 Year of Damage in 1 Use" and "Deeply repairs and reconstructs – dry chemically treated hair," as shown below:



The only reason a consumer would purchase the Total Repair 5 Damage Erasing Balm is to obtain the advertised hair repair benefits.

4.   However, no ingredient in the Total Repair 5 Damage Erasing Balm is demonstrated to actually repair hair, particularly at the rate claimed by Defendant. Hair is primarily composed of a family of proteins called keratin, and once damaged through heat treatments, daily brushing, and other damaging acts, can be most effectively restored only with treatments that target and repair keratin. The conditioning ingredients in the Product, including Behentrimonium Chloride, Amodimethicone and Hydroxypropyl Guar, might very temporarily enhance the illusion of healthy hair, but certainly do not "Repair Up to 1 Year of Damage in 1 use" because they do not specifically target and repair keratin proteins. Further, the ingredients are commonly found in other competitor products that do not share similarly outrageous claims.

5.   Consumer product companies intend for consumers to rely upon their representations, and reasonable consumers do in fact so rely. These representations are the only source of information consumers can use to make decisions concerning whether to buy and use such products.

6.   Consumers lack the ability to test or independently ascertain the efficacy and genuineness of product claims of normal everyday consumer products, especially at the point of sale. Reasonable customers must and do rely on the company to honestly report the nature of a product.

7.   Plaintiffs and Class Members relied on Defendant's hair repair representations in deciding to purchase the Product and were thereby deceived.

8.   As a result of Defendant's misconduct, Defendant was able to sell the Product to hundreds of thousands of consumers throughout the United States and to realize sizeable profits.

9.  Plaintiffs and Class Members (defined below) were harmed and suffered actual damages in that Plaintiffs and the Class Members did not receive the benefit of their bargain as purchasers of the Product, which were represented to "Repair Up to 1 Year of Damage in 1 Use." Instead, Plaintiffs and Class Members are worse off after purchasing the Product, as the Total Repair 5 Damage Erasing Balm did not perform its advertised function of repairing hair damage.

10. Plaintiffs bring this action on behalf of themselves and all other similarly situated consumers nationwide, who, from the applicable limitations period up to and including the present (the "Class Period"), purchased the Product. Plaintiffs seek to end Defendant's dissemination of this false and misleading advertising message, correct the false and misleading perception it has created in the minds of consumers, and to obtain redress for those who have purchased the Total Repair 5 Damage Erasing Balm.

11. Defendant marketed its L'Oreal Paris® Advanced Haircare Total Repair 5 Damage Erasing Balm in a way that is deceptive to consumers under consumer protection laws of New York. Defendant has been unjustly enriched as a result of its conduct. For these reasons, Plaintiffs seek the relief set forth herein.

## JURISDICTION AND VENUE

12. This Court has original jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). This is a putative class action whereby: (i) the proposed class consists of over 100 class members; (ii) at least some of the proposed class members have a different citizenship from Defendant; and (iii) the amount in controversy exceeds the sum of value of $5,000,000.00, exclusive of interest and costs.

13. This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction. This Court has personal jurisdiction over Defendant because its Product is

advertised, marketed, distributed, and sold throughout New York State; Defendant engaged in the wrongdoing alleged in this Complaint throughout the United State, including in New York State; Defendant is authorized to do business in New York State; and Defendant has sufficient minimum contacts with New York and/or otherwise have intentionally availed themselves of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant is engaged in substantial and not isolated activity within New York State.

14. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391(a) and (b), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District and Defendant is subject to personal jurisdiction in this District. Plaintiffs purchased Defendant's Product in New York County.

## PARTIES

*Plaintiffs*

15. Plaintiff VIVIAN LEE is, and at all relevant times hereto has been, a resident of the State of New York and resides in New York County, New York. In the twelve month period prior to the filing of this Complaint, Plaintiff LEE was exposed to and saw Defendant's hair repair claims on the Product's packaging and labeling. In reliance on the hair repair claims propagated by Defendant, Plaintiff LEE purchased the Product for personal consumption at a Walgreen's retail store in Manhattan. The retail purchase price was approximately $9.24 (or more) for one 8.5 oz. jar of the Product. Plaintiff purchased the Product believing it would provide the advertised hair repair benefits listed on its packaging and labeling. When purchasing the Product, Plaintiff read and relied upon the representations on the Product label. Plaintiff purchased the Product believing it would provide the advertised hair repair benefits, even though it did not after she

used the Product as instructed by the packaging.  As a result of her purchase, Plaintiff suffered injury in fact and lost money. Had Plaintiff known the truth about Defendant's misrepresentations and omissions, she would not have purchased the Product.  Plaintiff is not claiming physical harm or seeking the recovery of personal injury damages. Further, should Plaintiff encounter the Product in the future, she could not rely on the truthfulness of the packaging, absent corrective changes to the packaging. However, Plaintiff apremium, so long as Defendant engages in corrective advertising.

16. Plaintiffs JOHN DOES 1-100 are, and at all times relevant hereto has been, citizens of any of the fifty states and the District of Columbia. During the Class Period, Plaintiffs JOHN DOES 1-100 purchased the Products for personal consumption or household use within the United States.

*Defendant*

17. Defendant L'OREAL USA, INC. is a corporation organized under the laws of the state of Delaware, with its principal place of business located at 575 Fifth Avenue, New York, NY 10017 and an address for service of process at The Prentice-Hall Corporation System, Inc., 2711 Centerville Road Suite 400, Wilmington, DE 19808. Defendant is an industry leader that designs, manufactures, tests, markets, distributes and sells popular consumer beauty products, including the L'Oreal Paris® Advanced Haircare Total Repair 5 Damage Erasing Balm under the hair care products brand L'Oreal Paris®.

18. Defendant develops, manufactures, distributes, markets, and sells personal care, health and beauty products, including the L'Oreal Paris® brand, throughout the fifty states and the District of Columbia. The labeling, packaging and advertising for the Product, relied upon by Plaintiffs, were prepared and/or approved by Defendant and its agents, and were disseminated by

Defendant and its agents through advertising containing the misrepresentations alleged herein. Such labeling, packaging and advertising were designed to encourage consumers to purchase the Product and reasonably misled the reasonable consumer, i.e. Plaintiffs and the Class, into purchasing the Product. Defendant owned, manufactured and distributed the Product, and created and/or authorized the unlawful, fraudulent, unfair, misleading and/or deceptive labeling, packaging and advertising for the Product.

**FACTUAL ALLEGATIONS**

**The L'Oreal Paris® Advanced Haircare Total Repair 5 Damage Erasing Balm**

19. Defendant manufactures, markets, and sells the L'Oreal Paris® Advanced haircare lines, which includes the Advanced Haircare Total Repair 5 Damage Erasing Balm Product, as part of the L'Oreal Paris® brand.

20. The L'Oreal Paris® Advanced haircare line is sold at stores such as Walgreens, CVS, Target and Walmart, at select boutiques, and through e-commerce websites such as lorealparisusa.com, Amazon.com and Ulta.com.

21. Defendant manufactures, distributes, markets, and sells nationwide the L'Oreal Paris® Advanced Haircare Total Repair 5 Damage Erasing Balm. The Total Repair 5 Damage Erasing Balm Product retails for approximately $9.24 (or more) for 8.5 fl. oz.

**Defendant's False and Deceptive Advertising of the Total Repair 5 Damage Erasing Balm**

22. Throughout its advertising of L'Oreal Paris® Advanced Haircare Total Repair 5 Damage Erasing Balm, Defendant had consistently conveyed the very specific message to consumers that the Product will "repair up to one year of damage in one use."

23. Since launching the L'Oreal Paris® Advanced Haircare line, Defendant has consistently conveyed its uniform, deceptive message to consumers throughout the United

States, including New York, that the Product will repair one year of hair damage in one use. This hair repair message has been made and repeated across a variety of media including Defendant's websites and online promotional materials, and at the point of purchase, where it cannot be missed by consumers. In truth, Defendant's hair repair claims are false, misleading, and deceptive.

24. Defendant's false, misleading, and deceptive marketing campaign begins with the front of the Product's package and label. The front of every L'Oreal Paris® Advanced Haircare Total Repair 5 Damage Erasing Balm's packaging and labeling states prominently in all capital letters, printed in large, bolded font, that the Total Repair 5 Damage Erasing Balm "REPAIRS UP TO 1 YEAR OF DAMAGE IN 1 USE." The front of the Product's packaging and labeling also states the Product "deeply repairs and reconstructs dry chemically treated hair." *See* front of Product packaging and labeling below:



**Defendant's Damage Repair Claims Are False and Misleading**

25. In truth, the Product does not actually repair damaged hair and certainly not within one use, as advertised by the Defendant.  The packaging and marketing materials used by Defendant contain and propagate identical claims.

26. Upon information and belief, there is nothing contained in the Product that can cause damaged hair to be repaired in just one use. Defendant does not provide the public with any peer-reviewed, independent clinical studies that show the Product or any of the ingredients cause damaged hair to be repaired within the claimed time frame. Thus, Defendant's damage repair claims are false, misleading and reasonably likely to deceive the public.

27. A reasonable consumer would not interpret Defendant's damage repair claims as being purely cosmetic in nature because Defendant's statements are is that one year's worth of hair damage will be repaired within one use.

28. As the manufacturers, sellers and/or distributors of the Product, Defendant's possesses specialized knowledge regarding the content and effects of the ingredients contained in the Product on hair repair.

29. Defendant knew or should have known, but failed to disclose that the Product does not actually "repair[s] up to 1 year of damage in 1 use" and they do not have competent and reliable clinical tests to support their its claims.

30. As a result of Defendant's deceptive damage repair claims, Plaintiffs and other members of the proposed Class have purchased the Product that does not perform as advertised. Moreover, they have paid a price premium for the Product over other hair treatment products sold in the market that do not claim to repair or reverse hair damage in a single use. A sample of competitor products are shown below:

| Product | Price | Seller |
|---|---|---|
| Aussie 3 Minute Miracle Color Conditioning Treatment for Colored Hair, 8 OZ | $3.99 | CVS |
| Blue Magic Conditioner Coconut Oil | $2.99 | CVS |
| **L'oreal Total 5 Repair Balm** | **$9.24** | **CVS** |

31. Defendant has reaped enormous profits from its false, misleading and deceptive marketing and sale of the Product. Plaintiffs and members of the proposed Class have been deceived and/misled by Defendant's deceptive damage repair claims. Defendant's damage repair claims were a material factor in influencing Plaintiffs' decision to purchase and use the Product. Plaintiffs would not have purchased the Product had they known that Defendant's damage repair claims were false and misleading.

## CLASS ACTION ALLEGATIONS

*The Nationwide Class*

32. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this nationwide action on behalf of themselves and all members of the following class of similarly situated individuals or entities (the "Nationwide Class"):

> All persons or entities that the Product for personal use in the United States. Excluded from this Class are Defendant's current and former officers, directors, and employees, and those who purchased the Product for the purpose of resale. Also excluded from the Class is the judicial officer to whom this lawsuit is assigned.

*The New York Subclass*

33. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff LEE also brings this action against Defendant for herself and all members of the following sub-class of similarly situated individuals and entities (the "New York Subclass"):

> All persons or entities that purchased the Product for personal use in New York. Excluded from this Class are Defendant's' current and former officers, directors, and employees, and those purchased the Product for the purpose of resale.

34. Plaintiffs reserve the right to revise the Class definitions based on facts learned in the course of litigating this matter.

35. ***Numerosity.*** While the exact number and identities of purchasers of the Product are unknown to Plaintiffs at this time, Plaintiffs are informed and believe that the Nationwide Class and the New York Subclass (collectively, the "Class" or "Class Members") contain thousands of purchasers and are so numerous that individual joinder of all Class members is impracticable.

36. ***Existence and Predominance of Common Questions of Law and Fact.*** Questions of law and fact arise from Defendant's conduct described herein. Such questions are common to all Class members and predominate over any questions affecting only individual Class members and include:

a.   Whether the claims discussed above are true, or are misleading, or objectively likely to deceive;

b.   Whether Defendant's marketing and advertising of the Products is false, fraudulent, deceptive, unlawful or misleading;

c.   Whether Defendant has breached warranties made to the consuming public about its Product;

    d.   Whether Defendant's marketing, promotion, advertising and sale of the Product is and was a deceptive act or practice in the conduct of business directed at consumers, giving rise to consumer law violations in all relevant jurisdictions;

    e.   Whether Plaintiffs and members of the Class sustained monetary loss and the proper measure of loss;

    f.   Whether Defendant's conduct constitutes unjust enrichment, and whether equity calls for disgorgement of unjustly obtained or retained funds, restitution to, or other remedies for the benefit of the Class;

    g.   Whether Plaintiffs and other members of the Class are entitled to other appropriate remedies, including corrective advertising and injunctive relief; and

    h.   Whether Defendant's conduct rises to the level of reprehensibility under applicable law such that the imposition of punitive damages is necessary and appropriate to fulfill the societal interest in punishment and deterrence, and the amount of such damages and/or its ratio to the actual or potential harm to the Class.

37. *Typicality*. Plaintiffs' claims are typical of those of the Class members because, *inter alia*, Plaintiffs and the other Class members were all injured by the same uniform conduct, as detailed herein, and were subject to Defendant's hair repair claims that accompanied each and every Total Repair 5 Damage Erasing Balm Product that Defendant sold. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class.

38. *Adequacy of Representation*. Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained competent counsel experienced in prosecuting nationwide consumer class actions. Plaintiffs understand the nature of their claims herein, has no

disqualifying conditions, and will vigorously represent the interests of the Class. Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of the Class.

39. *Superiority*. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by any individual Class member is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. Thus, it would not be economically feasible for an individual class member to prosecute a separate action on an individual basis, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

40. The prerequisites to maintaining a class action for equitable relief pursuant to Rule 23(b)(2) are also met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

41. Plaintiffs seek preliminary and permanent equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to prevent Defendant from engaging in the acts described, and requiring Defendant to provide full restitution to Plaintiffs and Class members.

42. Unless a Class is certified, Defendant will retain monies received as a result of its conduct that were taken from Plaintiffs and Class members.

**CAUSES OF ACTION**

**COUNT I**

**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
(DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)
(On Behalf of New York Subclass)**

43. Plaintiff LEE realleges and incorporates herein by reference all allegations contained above as if fully set forth herein, and further alleges as follows:

44. Plaintiff LEE brings this claim individually and on behalf of the other members of the Class for violations of NY GBL § 349.

45. Defendant's business acts and practices and/or omissions alleged herein constitute deceptive acts or practices under NY GBL § 349, which were enacted to protect the consuming public from those who engage in unconscionable, deceptive or unfair acts or practices in the conduct of any business, trade or commerce.

46. The practices of Defendant described throughout this Complaint, were specifically directed to consumers and violate the NY GBL § 349 for, inter alia, one or more of the following reasons:

     a.  Defendant engaged in deceptive, unfair and unconscionable commercial practices in failing to reveal material facts and information about the Product, which did, or tended to, mislead Plaintiff and the Class about facts that could not reasonably be known by them;

     b.  Defendant failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

      c.  Defendant caused Plaintiff and the Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

      d.  Defendant failed to reveal material facts to Plaintiff and the Class with the intent that Plaintiff and the Class members rely upon the omission;

      e.  Defendant made material representations and statements of fact to Plaintiff and the Class that resulted in Plaintiff and the Class reasonably believing the represented or suggested state of affairs to be other than what they actually were;

      f.  Defendant intended that Plaintiff and the members of the Class rely on its misrepresentations and omissions, so that Plaintiff and Class members would purchase the Product; and

      g.  Defendant knowingly and falsely represented and advertised that the Product was fit to be used for the purpose for which it was intended, to repair hair damage, when Defendant knew that the Product did not work as promised.

47. Under all of the circumstances, Defendant's conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

48. Defendant's actions impact the public interest because Plaintiffs and members of the Class were injured in exactly the same way as thousands of others purchasing the Product as a result of and pursuant to Defendant's generalized course of deception.

49. By committing the acts alleged in this Complaint, Defendant has misled Plaintiff and the Class into purchasing the Product, in part or in whole, due to an erroneous belief that the

Product will physically repair damaged hair in as little as one use. This is a deceptive business practice that violates NY GBL § 349.

50. Defendant's hair repair claims misled Plaintiff and the members of the Class. Had Plaintiff and members of the Class known of the true facts about the Product's failure to work as promised, they would not have purchased the Product and/or paid substantially less for another product.

51. The foregoing deceptive acts, omissions and practices were directed at consumers.

52. The foregoing deceptive acts, omissions and practices set forth in connection with Defendant's violations of NY GBL § 349 proximately caused Plaintiff and other members of the Classes to suffer actual damages in the form of, *inter alia,* monies spent to purchase the Product, and are entitled to recover such damages, together with equitable and declaratory relief, appropriate damages, including punitive damages, attorneys' fees and costs.

## COUNT II

### NEGLIGENT MISREPRESENTATION
### (On Behalf of the Nationwide Class)

53. Plaintiffs reallege and incorporate herein by reference all allegations contained above as if fully set forth herein, and further allege as follows:

54. Defendant, directly or through their agents and employees, made false representations, concealments, and nondisclosures to Plaintiffs and members of the Class.

55. In making the representations of fact to Plaintiffs and members of the Class described herein, Defendant has failed to fulfill its duties to disclose the material facts set forth above. The direct and proximate cause of this failure to disclose was Defendant's negligence and carelessness.

56. Defendant, in making the misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the representations were not true. As the manufacturer, distributor, and marketer of the Product, Defendant was in a unique position to know the truth about the hair repair claims. Defendant made and intended the misrepresentations to induce the reliance of Plaintiffs and members of the Class.

57. Plaintiffs and members of the Class reasonably relied upon these false representations and nondisclosures by Defendant when purchasing the Product, which reliance was justified and reasonably foreseeable.

58. As a result of Defendant's wrongful conduct, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for the Product, and any interest that would have been accrued on those monies, all in an amount to be determined according to proof at time of trial.

**COUNT III**

**BREACH OF EXPRESS WARRANTIES**
**(On Behalf of the Nationwide Class)**

59. Plaintiffs reallege and incorporate herein by reference all allegations contained above as if fully set forth herein, and further allege as follows:

60. The Uniform Commercial Code section 2-313 provides that an affirmation of fact or promise, including a description of the goods, becomes part of the basis of the bargain and creates an express warranty that the goods shall conform to the promise and to the description.

61. At all times, New York and other states have codified and adopted the provisions of the Uniform Commercial Code governing the express warranty of merchantability.

62. Plaintiffs, and each member of the Class, formed a contract with Defendant at the time Plaintiffs and the other members of the Class purchased the Total Repair 5 Damage Erasing Balm. The terms of that contract include the hair repair promises and affirmations of fact made by Defendant on the Product's labels and packages as described above. The hair repair claims made by Defendant constitute express warranties that became part of the basis of the bargain, and are part of a standardized contract between Plaintiffs and the members of the Class on the one hand and Defendant on the other. Plaintiffs and the Class members placed importance on Defendant's hair repair claims.

63. All conditions precedent to Defendant's liability under this contract has been performed by Plaintiffs and the Class.

64. Defendants breached the terms of this contract, including the express warranties, with Plaintiffs and the Class by not providing a Product that repairs damaged hair, let alone in the time frames represented, as described above.

65. As a proximate result of Defendant's breach of its warranties, Plaintiffs and Class members have suffered damages in an amount of the purchase price of the Total Repair 5 Damage Erasing Balm products they purchased.

**COUNT IV**

**UNJUST ENRICHMENT**
**(On Behalf of the Nationwide Class)**

66. Plaintiffs reallege and incorporate herein by reference all allegations contained above as if fully set forth herein, and further allege as follows:

67. Defendant received certain monies as a result of its uniform deceptive marketing of the Product that are excessive and unreasonable.

68. Plaintiffs and the Class conferred a benefit on Defendant through purchasing the Product and Defendant has knowledge of this benefit and has voluntarily accepted and retained the benefits conferred on them.

69. Defendant will be unjustly enriched if it is allowed to retain such funds, and each Class member is entitled to an amount equal to the amount they enriched Defendant and for which Defendant has been unjustly enriched.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Classes, seek judgment against Defendant, as follows:

a.  An Order that this action be maintained as a class action and appointing Plaintiffs as representatives of the Nationwide Class and New York Subclass;

b.  An Order appointing the undersigned attorneys as class counsel in this action;

c.  Awarding restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to Plaintiffs and the proposed Class members;

d.  Awarding declaratory relief as permitted by law or equity, including: directing Defendant to identify, with Court supervision, victims of its conduct and pay them all money they are required to pay;

e.  Statutory pre-judgment and post-judgment interest on any amounts;

f.  Awarding attorneys' fees and costs; and

g.  Such other relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs, on behalf of themselves and the Class, demand a trial by jury on all questions of fact raised by the Complaint.


Dated: November 30, 2016

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

By: _____
       C.K. Lee, Esq.